[Civ. No. 36913. Second Dist., Div. One. Oct. 1, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LEONARD BOUSEFIELD EVANS, Real Party in Interest.

**COUNSEL**

Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Irwin S. Evans and Cochran, Atkins & Evans for Real Party in Interest.

---

OPINION

**THOMPSON, J.** — The People seek a writ of mandate compelling the respondent superior court to vacate its order granting the motion of real party in interest to suppress evidence pursuant to Penal Code section 1538.5. We conclude that a peremptory writ of mandate should be issued.

### Facts

Stated in the light most favorable to the order of the superior court suppressing evidence, the record reveals the following. At about 12:15 a.m., on January 8, 1970, real party in interest Evans and Wallace James Allen came to the air freight counter of United Airlines at the Los Angeles International Airport. Evans told John E. Medina, the clerk on duty, that he would like to ship a box to Chicago and inquired how soon he could get the box shipped. Medina replied that there were United flights leaving at 7:30 and 9 a.m. Evans asked if the package could be shipped on the 7:30 flight and Medina replied in the affirmative. The package consisted of a cardboard carton 2 feet long by 18 inches wide by 4 inches thick, weighing approximately two pounds. Medina, in order to prepare an airbill in accordance with applicable tariff regulations, inquired concerning the content and value of the package. Evans declared that the package contained a man's sweater and was worth $200. He asked that it be insured for $400. Evans paid charges of $14.50 for the shipment.

After Evans departed, Medina picked up the package to put the airbill and "stickers" on it. He noticed that something was rattling inside. Fearing that the package might contain "glass or something which might be already broken," Medina informed his supervisor, Mr. Herbers. Herbers took the package to Robert Grantham, cargo supervisor for United Airlines. Medina and Herbers told Grantham that the shipper had declared the contents of the package to be clothing but that they doubted the truth of the declaration. Grantham handled and "hefted" the package. He noted that it rattled. Grantham determined to open the package. His principal reason for opening the package was his conclusion from the rattling of the package that it did not contain a garment as declared by the shipper. He was suspicious that the package might contain contraband although he had no specific contraband in mind. Grantham's decision to open the

package was based upon a government tariff contained in a Civil Aeronautics Board regulation. His job responsibility required that he open it.

Grantham opened the package. Within it he saw newspaper stuffed around mothballs and a substance which he thought to be hashish. Grantham, over the past two and one-half years, had been in contact three times with Sergeant McKnight of the Los Angeles Police Department concerning shipments of contraband narcotics. He had in his file McKnight's card which contained McKnight's business and home telephone numbers.

Grantham telephoned McKnight. He then replaced some of the newspaper in the box, reclosed it, and set the box on the floor. While Grantham did not "believe" the hashish was thereafter "readily visible," he was unsure whether the content of the package was actually visible. McKnight arrived about 35 minutes after the call. Grantham stated, "I believe we have some hashish here; here it is." He then opened the package to display the hashish to McKnight. Sergeant McKnight saw a "brown cakey substance" 7½ inches by 3¾ inches in size on top of some newspaper in the package when he entered Grantham's office. He broke the "cake" in half, placed one-half back in the package, and kept the remaining one-half. McKnight tested the half retained by him and found it to be a form of marijuana.

The package containing the other one-half of the "cake" was shipped to Chicago as designated by real party in interest Evans. The Chicago police were notified. Armed with a search warrant based upon information from the Los Angeles police, the Chicago authorities apprehended the consignee of the package as he took delivery. The consignee, after being advised of his *Miranda* rights, told the Chicago police that he obtained hashish and marijuana by telephoning Leonard Evans or Wallace Allen at a designated telephone number in Los Angeles. He gave the Chicago police descriptions of Evans and Allen and stated that they lived at 2508 9th Avenue in Los Angeles. The 2508 9th Avenue address coincided with the address of the telephone number which the consignee stated that he used to order marijuana and hashish from Los Angeles. It also corresponded to the address upon a vehicle registration issued to a red MG whose license plate number was noted by a security guard when he observed real party in interest Evans and Allen enter it after they had left the package at the United Airlines counter.

Based on the information in hand, the Los Angeles police obtained a search warrant for the premises at 2508 9th Avenue. In executing the warrant, they found 21 bags of marijuana and a quantity of cocaine, pentobarbital, and disoxephedrine. After a preliminary hearing, real party in interest Evans and Allen were bound over for trial. Real party in interest moved in the superior court to suppress evidence pursuant to Penal Code

section 1538.5, "the object of the motion . . . to be the contents of the package that was being shipped." After a hearing in which the trial court considered evidence presented at the preliminary examination and further testimony, it found that Grantham acted as the agent of the police in reopening the package after Sergeant McKnight entered Grantham's office. The trial court granted the motion suppressing all evidence, including that obtained in the Chicago and Los Angeles searches pursuant to warrant as well as that obtained from the examination of the package at the airport. The People then sought review of the order by application for a peremptory writ of mandate addressed to this court.

Our examination of the record indicates that the trial court erred in concluding that the evidence suppressed by it is the product of an illegal search and seizure. Accordingly, we issue our peremptory writ of mandate.

### The Package at the Airport

■ If otherwise lawfully present, police officers may seize contraband "in plain sight" which is observed by them without a search. (*People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721].) That principle validates Sergeant McKnight's seizure of the package of hashish at the airport. Sergeant McKnight was lawfully present in Grantham's office when the latter pointed out the package in which the hashish was seen by McKnight. ■ Since the rule excluding evidence obtained by an illegal search is not applicable to searches by private persons (*People* v. *Randazzo,* 220 Cal. App.2d 768, 775 [34 Cal.Rptr. 65], cert. den. 377 U.S. 1000 [12 L.Ed.2d 1050, 84 S.Ct. 1933]), the contraband observed by the police officer was in plain view without a preceding official search unless Grantham in opening the package was acting as an agent of the police. (*People* v. *Superior Court* (*Smith,* r.p.i.), 70 Cal.2d 123, 129 [74 Cal.Rptr. 294, 449 P.2d 230]; see *People* v. *Fierro,* 236 Cal.App.2d 344, 347 [46 Cal.Rptr. 132].) ■ While the trial court found that Grantham was acting as an agent of the police, that finding is totally unsupported by the record. It is that lack of evidentiary support which renders the order here reviewed by us erroneous.

The evidence is uncontroverted that Grantham originally opened the package in the course of his duties as an employee of United Airlines. He suspected, with considerable reason, that the consignor of the package had misdeclared its content when asked about it in accord with applicable tariff regulations. Grantham, under those circumstances, was justified in opening the package to determine the validity of his suspicion. (Rules and Regulations, Issued November 8, 1967. C.A.B. No. 96, rule No. 24.) While Grantham suspected that the package might contain some form of

contraband, he testified unequivocally that the latter suspicion was incidental and not the prime reason for opening the package. We conclude therefore that the original opening was conducted by Grantham solely as the agent of United Airlines and not as an agent of the police.

Nor does the record contain any evidence that there was any subsequent conduct by Grantham or anyone else constituting a search of the package as an agent of the police. If we accept Sergeant McKnight's essentially uncontradicted testimony as true, he observed the hashish when he first entered Grantham's office. If we discount that testimony, there is nevertheless no evidence of conduct by a police agent which disclosed the contraband. Grantham, in opening the package more fully to display its content, was acting as a concerned citizen to aid the police. He was not, however, acting by any prearrangement or other directive which made him an agent of the police. (Cf. *People* v. *Fierro, supra,* 236 Cal.App.2d 344, where a private citizen conducted a search at the express direction of the police.)

*People* v. *McGrew,* 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1], and *Abt* v. *Superior Court,* 1 Cal.3d 418 [82 Cal.Rptr. 481, 462 P.2d 10], upon which real party in interest relies, are distinguishable from the case at bench. In *McGrew* an airline employee opened a footlocker which contained packages which he suspected to be marijuana. He closed the footlocker and called the authorities. After the police arrived, he opened the footlocker at their express request. A federal narcotics agent, acting in concert with a police officer, examined the content of the footlocker and determined that it contained contraband. Our Supreme Court, in holding that the evidence of the marijuana so found must be suppressed, emphasized that it was not in plain sight when the officers arrived and requested the airline employee to reopen the locker. (1 Cal.3d 404, 410.) In the case at bench, Grantham opened the package and disclosed its content to McKnight on his own initiative and not by reason of a prior request.

In *Abt,* an airline employee had been told by the police to be on the lookout for suspicious packages and to call the narcotics bureau if he was suspicious. He followed orders when two packages were given to him for shipment by "a hippie type with a big dark black beard." The employee first slit the packages with a knife and observed some tinfoil wrapped packages. Opening the tinfoil on one, he saw "forms of grass." The employee then closed the package and called the police. Upon arrival, the officers saw several tinfoil wrapped packages through a hole in the container. An officer removed one and observed marijuana through the torn wrapping. Our Supreme Court, in suppressing the evidence of marijuana so found, emphasized again that the contraband was not in plain sight because of the need to remove the tinfoil wrapped package from its opaque

container before the marijuana could be seen. (1 Cal.3d 418, 421.) The same facts which distinguish the case at bench from *McGrew* also distinguish it from *Abt*.

We note also that *Chambers* v. *Maroney*, 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975], casts doubt upon the continued vitality of *McGrew* and *Abt* even in situations falling within the factual pattern of those cases. Both *McGrew* and *Abt* apply to the situation of searches of moveable property the rule of *People* v. *Marshall*, 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665]. That case holds that probable cause to believe that a search will reveal contraband does not validate a search without a warrant of a home or other fixed premises unless the search is incident to a lawful arrest, is a mere view of matter in plain sight, or is conducted where there is a danger of imminent destruction, removal or concealment of the property. *Chambers*, decided by the United States Supreme Court approximately six months after the decisions in *McGrew* and *Abt*, adopts a different approach. That case distinguishes between searches of homes, offices and other fixed premises on the one hand and searches of moveable property on the other. *Chambers* holds that probable cause to believe that a search will reveal contraband may validate a search without a warrant of moveable property (there an automobile) not incident to an arrest although there is no danger of imminent destruction, removal or concealment of the property.[1] The test of *Chambers* appears to be that a warrantless search of moveable property is permissible where the facts in possession of the authorities give probable cause to believe that it will disclose articles the officers are entitled to seize and the reasonable alternatives open to the officers are either to search or to hold the property while seeking a search warrant. Thus the United States Supreme Court states: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (399 U.S. 42, 52 [26 L.Ed.2d 419, 428, 90 S.Ct. 1975, 1981].)

If the rule of *Chambers* is applied to the case at bench, the seizure of the contraband is validated since McKnight possessed overwhelming probable cause to believe that the package in the United Airlines office contained hashish, and he possessed only two reasonable alternatives: to seize the content of the package in order to confirm or dispel that probable cause, or to seek a warrant to search the moveable property. Without the benefit of the rule of *Chambers*, the seizure of the contraband is neverthless valid

---

[1]In *Chambers*, the automobile searched was in police custody.

since, under the undisputed facts of the record, the hashish was in plain sight within the rule of *Marshall*.

## The Other Property Seized

The trial court held that since the search warrants which disclosed the other contraband offered against the real party in interest were obtained based upon information illegally obtained, the other contraband must also be suppressed. Since we have determined that the original seizure of property at the United Airlines office was valid, we of necessity have also determined that the search warrants are based upon properly obtained evidence. We conclude therefore that the trial court erroneously suppressed the evidence of that other contraband.

## Disposition

Let a peremptory writ of mandate issue commanding the respondent superior court to annul its action granting the motion of the real party in interest Evans to suppress the evidence against him in the case entitled People of the State of California v. Leonard Bousefield Evans, et al., superior court number A166162, and to make a new and different order denying that motion to suppress evidence.

Wood, P. J., and Gustafson, J., concurred.

A petition for a rehearing was denied October 27, 1970, and the petition of the real party in interest for a hearing by the Supreme Court was denied November 25, 1970.