[Civ. No. 38962. Second Dist., Div. One. Dec. 13, 1971.]

LEAH WEINBERG et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

John M. Sink, Hatch & Parent and Gerald B. Parent for Petitioners.

No appearance for Respondent.

David M. Minier, District Attorney, Zel Canter and Patrick J. McKinley, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**LILLIE, P. J.**—Defendants Weinberg and Bernstein were jointly charged in four counts with possession for sale of marijuana, possession of mari-

juana, possession of restricted dangerous drugs and maintaining a place for the purpose of selling marijuana. Upon denial of their motion to suppress the evidence pursuant to section 1538.5, Penal Code, they filed with this court petition for writ of mandamus. Thereafter we issued alternative writ of mandate, and the cause was orally heard. After full consideration of the merits and for the following reasons we discharge the alternative writ and deny the petition.

At the hearing on the motion pursuant to section 1538.5 the following facts were established by way of stipulation which recited the proposed testimony of four postal employees and Officer Kirkwood; no other evidence was offered.

On March 1, 1971, a package was mailed as first-class mail from a branch postal station in Los Angeles to Leah Weinberg in Santa Barbara; when mailed it weighed one and one-half to two pounds and was marked "air mail" and "special delivery" bearing the appropriate stamps. Around 4 a.m. on March 3, 1971, at the Salsipuedes postal facility in Santa Barbara the package "in a condition to need rewrapping" was picked off the conveyor belt for that purpose in the normal course of post office procedure by a postal employee; the package was shoebox-shaped wrapped in brown wrapping paper and tied with a string; inside the box was a brown paper sack; one end was "squashed" and the paper bag as well as the outside brown paper was torn exposing a portion of the contents so that a green leafy material (later identified as marijuana) was visible without altering or changing the package; he took it to a rewrap desk. The man at the rewrap desk became suspicious because the package was marked "special delivery" and had no return address; he picked up the box, looked at the material and thought it was marijuana and unmailable matter;[1] the

---

[1] At first defense counsel offered a stipulation in which he included the recital that the postal employee who picked the damaged package off the conveyor belt at 4 a.m. described it as "a shoebox-shaped package with brown wrapping paper and tied with a string. The box was inside a brown paper sack; that one end was squashed, that the outside brown paper was torn so that one could see inside the wrapping"; and that the rewrap man became suspicious and "he picked up the box, looked in it, and although he could not identify it, he thought that it was marijuana and was unmailable matter; that he took it to several people in the facility who looked at it, but who also could not identify it but who also thought that it might be marijuana and gave it to the supervisor, who then took it to another employee to seek identification of it"; however, the proposed stipulation was amended in accord with the following:

"THE COURT: It leaves somewhat in the air the question of whether the contents were visible from the outside. Somebody says they looked into the box. You can infer that they could see the contents.

"MR. FAIRFIELD [deputy district attorney]: That was in the area which I was going to make an addendum to the stipulation on, your Honor, and if I may be permitted, perhaps it will meet with counsel's satisfaction: That when first observed at approximately 4:00 A.M. in the manner described, the package in addition to being torn

package was shown to several employees who could not identify the contents but thought it might be marijuana, then it was given to the supervisor who took it to the office of the superintendent of mails (Mr. Finck) and left it there. Around 8 a.m. the postal inspector, Mr. Seyfried, came to work; thereafter Officer Kirkwood received a telephone call from Seyfried who told him they had a package they thought was unmailable, "he had opened it and had just peeked"[2] and thought it was marijuana; 10 minutes later Officer Kirkwood went to the postal facility where Mr. Finck showed him the package which was then transported by Mr. Seyfried and Officer Kirkwood to the police station where it was turned over to a lab technician

---

open and the paper bag being torn, that the contents were in plain view, the contents being a green leafy material later identified to be marijuana.

"That is the first amendment that I would make to the proposed stipulation, your Honor.

"MR. PARENT [attorney for Bernstein]: I think the question of plain view is almost subjective. I think it would be sufficient to state that it was visible, part of the contents were [sic] visible.

"MR. FAIRFIELD: I will try and be more specific, your Honor: That the contents, namely green leafy material, were visible without moving, opening or changing any condition of the package.

"MR. SINK [attorney for Weinberg]: That is the testimony in effect, that a portion of the contents were visible without changing, and we are stipulating to what they would testify if he testified.

"THE COURT: Well, then, could that be translated into 'plain view'?

"MR. SINK: I think 'visible' is better. It is a matter of degree."

[2]"MR. FAIRFIELD: Perhaps if I might say something now, perhaps it would make it clearer: That Mr. Seyfried would also testify that he came on duty at approximately 8:00 A.M. in the morning on the day in question.

"MR. PARENT: I don't know it to be a fact, but assuming it is a fact, I would have no objection to it.

"MR. FAIRFIELD: Perhaps it would be clearer still if I stated the reasons for that offer of the stipulation. The reasons are that an earlier stipulation was that the package first came to the attention of the post office employees at 4:00 A.M. and that it was [open*] at that time and the contents were in plain view. Now we are stipulating that Mr. Seyfried looked at the package and, to use an exact quotation used by Mr. Parent, he had opened it up and he had just 'peeked.' That is the reason for the stipulation.

"THE COURT: Implying it was closed at that time?

"MR. FAIRFIELD: Exactly.

"MR. SINK: Not that he had, but that he said he had.

"MR. FAIRFIELD: Not that Mr. Seyfried was the first post office employee to look at the package, because Mr. Seyfried does not come to work until 8:00 A.M. in the morning.

"With that amendment, the People would so stipulate."

---

*The transcript of the oral proceedings in the trial court shows that Mr. Fairfield used the word "opened" in his explanation "that the package first came to the attention of the post office employees at 4:00 A.M. and that it was open*ed* at that time and the contents were in plain view." However, it is obvious from the entire stipulation, and in particular Mr. Fairfield's amendments, that this was either a typographical error or the result of a misunderstanding of the reporter and that the word should be "open."

who removed some of the contents and determined it was marijuana. Officer Kirkwood rewrapped the package using the same kind of tape, learned from the post office that Leah Weinberg had received mail previously at the address on the package and then started to dictate an affidavit for a search warrant for the premises; he caused Officer Rochester to place the premises under surveillance and made arrangements with postal authorities to have the package delivered as a special delivery package to Leah Weinberg personally; Officer Kirkwood and others followed the postal employee in their cars. The package was delivered and Bernstein and Weinberg and one Crowell, who were at the door, went into the residence with the package remaining five minutes, left, drove away and were arrested five minutes later; the three were returned but Officer Kirkwood was denied entry to the residence; other officers remained there while he went to the district attorney's office and finished dictating his affidavit[3] for the search warrant. Later the package was found by Officer Kirkwood in the residence in a cedar chest which was locked and to which he had obtained the key.

In denying defendant's motion the trial court found in accord with the stipulation "the fact that the content of the package was open and the contents visible—not by reason of any act or requiring curiosity on the part of a postal employee."

 Claiming that the federal law prohibits a postal employee from looking into a first-class mail package, petitioners attack the validity of the search warrant on the ground that it was based upon an unlawful search and seizure. The claim is predicated on an alleged illegal search into first-class mail by postal inspector Seyfried based on his conversation with Officer Kirkwood wherein he told him he looked in the package and took a peek. This position lacks merit for it completely ignores the stipulated fact that when the package was first observed at 4 a.m. by postal employees part of the marijuana was exposed through the damaged end and was visible to them without moving, opening or changing the package in any way and without looking into the box.

The stipulation and amendments thereto establish that at 4 a.m. when the package was first observed and taken by a postal employee from the conveyor belt for rewrapping in the normal course of post office procedure and given to the rewrap man and showed by him to other employees, one

---

[3]Among other things, the lengthy affidavit recites "at 095 hours, Detective Kirkwood contacted Mr. Seyfried and [Mr. Finck], Foreman of Tour I, 31 North Salsipuedes Street. At this point, Mr. [Finck] showed Detective Kirkwood a brown package, approximately 6" x 12½" x 4½" which was open on one end, showing the contents to Detective Kirkwood."

end was torn open so that one could readily see, without changing the condition of the package, part of the contents which was marijuana, and that it was "visible" and the employees thought it was marijuana and unmailable matter. Suspecting it was contraband the rewrap man showed it to others including the supervisor who left it in the office of the superintendent of mails who gave it to the postal inspector. As mentioned by the trial judge the stipulation carries with it the fair and reasonable implication that after the postal employees observed the "visible" contents, one of them, probably the supervisor, closed the end of the package and left it in the office of the superintendent who was absent—at least it was closed when Seyfried saw it.

Thus, when first observed at 4 a.m. the package was so damaged that part of the marijuana therein was visible to the several postal employees; it was unnecessary to pry into the hidden interior of the package to see the contraband. ■ Observation of that which is "open to the eye and hand" does not constitute a search. (*People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Gilbert,* 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]), thus the search warrant was obtained upon observations which were not the product of any unlawful search. ■ The postal employees, in the normal course of postal procedure, having seen in plain view what they suspected to be marijuana (*Ker* v. *California,* 374 U.S. 23, 43 [10 L.Ed.2d 726, 743-744, 83 S.Ct. 1623]), had a right, indeed a duty, to investigate further to determine if the material in fact was contraband; this they did by turning it over to the inspector who brought it to the attention of police; at the station it was analyzed as marijuana. The contraband not having been seized in the course of any search, is not the subject of an unlawful seizure.

The package was closed when Seyfried saw it, but obviously it was closed by postal employees and reopened by him to look at the contents. The record fails to show, or even suggest, that initially the package was damaged or opened by postal employees, and that a portion of the contents was exposed through conduct, either intentional or accidental, on their part. Thus, neither violations of the federal law and postal regulations nor the right of a postal employee to open and inspect a package is here involved as in *People* v. *Superior Court* [*Flynn*], 275 Cal.App.2d 489 [79 Cal.Rptr. 904], relied on by petitioners. However, dispositive of the issue here are the principles articulated in that case. Therein Magill was delivering mail when the outside wrapping of the package came apart as did a box wrapped in it, and a brown paper bag fell out of the box; the bag was closed but not sealed, and Magill opened it and looked in finding marijuana. The court

held that, because Magill opened the paper bag and the trial judge found that the marijuana was not accidentally discovered but discovered by an act in clear violation of the federal statutes and postal regulations protecting the privacy of first-class parcels, opening of the package was a search which was unlawful (pp. 493-494); and that probable cause for the issuance of the search warrant was so tainted by being based upon information obtained by a postal employee's illegal act, that the contraband was inadmissible. The court said that in view of a lack of explanation as to Magill's purpose in looking into the bag—whether for idle curiosity or because he felt it necessary to know how fragile its contents were for rewrapping, or for some other reason—his action was prima facia illegal (p. 494). The following discussion sharply defines the distinction between *People* v. *Superior Court, supra*, 275 Cal.App.2d 489, and the instant case. "In *Oliver* [*v. United States* (8th Cir. 1957) 239 F.2d 818], the postman was a narcotics agent as well as a postman (although that fact was not used as a basis for the decision), while in the instant case Magill had no police connections. In *Oliver,* the postman did not open the mail package. He merely alerted the postal superintendent, who opened the package, and the ruling is based upon the one fact that the superintendent violated the law and the postal regulations by opening the package. In the case at bench, although there is no indication that Magill suspected the contents of the paper bag, he nevertheless opened it. The opening of the bag was a search. (See *People* v. *Marshall* (1968) 69 Cal.2d 51, 58-59 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Alexander* (1967) 253 Cal.App.2d 691, 699 [61 Cal.Rptr. 814].) The fact that the package in which it was contained was broken open accidentally did not, so far as the evidence shows, authorize him to open the bag even though it was unsealed. The reasoning of *Oliver* applies to the situation here. *This is not a case where the accidental breaking of the package revealed the contraband.* It required the act of the postman to violate the law and the postal regulations by opening the closed bag." (Italics added.) (Pp. 495-496.) Further at page 497 the court said: "Petitioner contends that the immediate end sought when Magill opened the bag could have been (1) to satisfy his curiosity, (2) to see if the contents had been damaged, (3) to see if the repackaging contemplated and effected would cause further damage to the contents, (4) to do amateur detecting on his own initiative, or (5) to assist law enforcement officers at their request in detecting contraband in the mails. If the motive had been in either the second or third category, there probably would have been no violation of law and we might not have been confronted with any problem. But as we hereinbefore stated, Magill did not claim either motive, and it must therefore be taken as established for the purposes of this proceeding that he violated the law. [Citation.]"

Here, the record clearly shows that initially no postal employee opened the package or peered into it to view the contents thus no violation of the federal law or postal regulations by postal employees and no question of motive were here involved. Having observed that which became visible through damage to the package resulting from an unknown cause, it was the duty of the postal inspector to communicate with and report the same to the proper authorities.

The alternative writ is discharged and the petition for writ of mandate is denied.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 11, 1972, and petitioners' application for a hearing by the Supreme Court was denied February 3, 1972.