[Crim. No. 16427. Second Dist., Div. Two. Dec. 10, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
GOVERNOR DONQUE HOWARD, Defendant and Appellant.

**COUNSEL**

Tolbert, Wooden & Malone and John H. Wooden for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**FLEMING, J.**—Howard appeals a judgment of conviction of possession of marijuana for sale (Health & Saf. Code, § 11530.5).

At 1 a.m. on 3 September 1967 Howard brought two packages to the United Airlines freight terminal in Los Angeles, one a suitcase tied with rope, the other a cardboard box wrapped in brown paper. Neither package had any writing or identification on it. Howard told the air freight agent, David Ventura, to ship the packages to Detroit, he gave Ventura a slip of paper with the consignee's name and address on it, and he directed the airline to hold the packages for pickup in Detroit rather than deliver them. Howard paid in cash and left. Bevis Walton, Ventura's supervisor, saw Howard at the air freight counter, and as Howard drove away Walton took down the license number of his vehicle.

Both Ventura and Walton were suspicious of Howard's packages. Ventura thought the suitcase "looked funny" the way it was wrapped. "The locks weren't very good and it was wrapped with rope, right around the center of the suitcase. And it did have a handle on it. It was just tied, the knot was tied underneath the handle." Walton's suspicions were aroused by the way the suitcase was tied, by "the time of the morning being shipped and the fact that it was prepaid and 'Notify.'" ". . . [N]ormally these things are delivered. Lots of them are delivered and lots of them aren't; but when they say 'Hold for pick up' or 'Notify on arrival,' a suitcase or

something, why, you become a little skeptical as to why they didn't have it delivered."

Walton noticed an unusual "kind of sweet" smell coming from the suitcase. He took the packages into another room and opened the suitcase. "[T]here was a mess of bricks in there, kind of wrapped in foil, like tinfoil." He opened one brick and saw "green leafy stuff." Once the package was open, "the whole room smelled." Walton called the police.

Police Officer Ginder arrived, and Walton showed him the packages. Ginder was without a warrant. He sniffed the packages and noticed "a sweet perfumey odor." It was an odor he had smelled "in connection with trying to disguise the smell of marijuana." Ginder opened the packages and saw twenty-six foil-wrapped bricks. He opened four or five of the bricks and found "a green leafy material resembling marijuana." In Ginder's opinion, the manner in which the bricks were packaged and their number indicated they were packaged for sale. He kept twenty-two of the bricks, sent four bricks in the packages to Detroit, and notified the Detroit police.

█ Howard contends the discovery of marijuana in the packages was the product of an unlawful search and seizure and therefore evidence of the discovery should have been excluded.

We conclude that the search was reasonable in the light of *People* v. *Lanthier*, 5 Cal.3d 751 [97 Cal.Rptr. 297, 488 P.2d 625]. In *Lanthier* university officials searched a briefcase in a student's library locker, discovered what they thought was marijuana, and called in the police for expert assistance. The briefcase was reopened, and the police confirmed that it contained marijuana. The Supreme Court validated the warrantless search by school officials and by police, because the briefcase was emitting an offensive odor, which created an emergency situation requiring prompt disposition. It was reasonable for school officials to open the locker and briefcase to search out the cause of the odor and then to call on the police for expert assistance when they found the briefcase apparently contained contraband. The court declared that in those circumstances the question who opened the briefcase when the police arrived "pales into insignificance." (*People* v. *Lanthier*, 5 Cal.3d 751, 757-758 [97 Cal.Rptr. 297, 488 P.2d 625].)

The facts of the case at bench are analogous to those in *Lanthier*. Airline agents had in their possession two packages for interstate shipment brought to them at one o'clock in the morning, strangely wrapped, without identifying markings, prepaid, to be picked up at destination without delivery, and which emitted an unusual "kind of sweet" odor. Apparently this was the

same odor as in *Lanthier,* which the court referred to as that of a preservative for marijuana. The airline agents reasonably suspected that illegal activity was afoot and thus were thrust into an "emergency situation." As a common carrier an airline is under a duty to transport goods presented to it for shipment with reasonable dispatch. (*Condakes* v. *Southern Pacific Company* (D.Mass. 1968) 295 F.Supp. 119, 120.) But carriage of the packages with knowledge of their contraband content would have been both a federal and a state crime. (18 U.S.C.A. § 1952; Health & Saf. Code, § 11531.) It was therefore reasonable for the airline agents, alerted by the presence of the smell, to open the packages (*Clayton* v. *United States* (9th Cir. 1969) 413 F.2d 297) and, when on doing so they discovered what appeared to be marijuana in commercial quantities, to call on the police for expert assistance. Under these circumstances the question who reopened the packages after the police on arrival had also noted the smell, as in *Lanthier,* "pales into insignificance."

The judgment is affirmed.

Herndon, J., concurred.

**ROTH, P. J.**—I dissent.

Our opinion reversing Howard's conviction, filed March 19, 1970, was predicated upon *People* v. *McGrew,* 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1], and *Abt* v. *Superior Court,* 1 Cal.3d 418 [82 Cal.Rptr. 481, 462 P.2d 10]. It was vacated on our grant of a rehearing on April 15, 1970. That rehearing, which I voted to deny, was granted by the then majority primarily because of a petition for certiorari pending the decision of the United States Supreme Court in *McGrew,* which was subsequently denied. (398 U.S. 909 [26 L.Ed.2d 67, 90 S.Ct. 1689].) Following that, we held this case until now upon the expectation that either *McGrew* or *Abt,* sharply criticized in petitions for hearings sought by the People (e.g., *People* v. *Superior Court* (*Moss* r.p.i.), 2d Civ. No. 36125, hg. granted May 15, 1970█), would be modified or even disapproved. That expectation has now been set aside as false in *People* v. *Lanthier,* 5 Cal.3d 751 [97 Cal.Rptr. 297, 488 P.2d 625], subscribed to by a unanimous court. As I read *Lanthier, Abt* and *McGrew* continue to be binding upon us.

*Lanthier,* relied upon by the majority, is totally inapplicable to this case on the evidence at bench, even as it is hospitably highlighted by the majority. *Lanthier* approved searches without warrants which have " '. . . tradition-

ally [been] upheld in emergency situations. [Citations.]' " (5 Cal.3d at pp. 755-756.) At bench, the airlines agent was plainly and concededly suspicious of illegal activity when he opened the packages. The supervisor of security guards in *Lanthier,* on the other hand, suspected nothing but spoiling food until the very moment when acting upon a request from Stanford University library authorities, he opened a locker and then a briefcase located therein from which the noxious odor emanated. (5 Cal.3d at p. 753.)

The distinction between the warrantless search at bench and the entirely fortuitous discovery of marijuana in *Lanthier* by officials seeking the source of offensive odors is obvious. Having awaited, without results, the reversal of views expressed in *McGrew* for well over a year, I would, under the unmistakable mandate of that case, as well as *Abt,* and even *Lanthier* itself, reverse the judgment.