**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Donald Eugene HODGES, Defendant-Appellee.**

No. 71–1052.

United States Court of Appeals, Sixth Circuit.

Oct. 1, 1971.

James J. Tansey, Crim. Div., Dept. of Justice, Washington, D. C., for appellant; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., Will Wilson, Asst. Atty. Gen., Washington, D. C., on brief.

Stephen T. McMurtry, Covington, Ky., (Court appointed), for appellee.

Before MILLER and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

MILLER, Circuit Judge.

The United States appeals from an order of the district court granting appellee's pre-trial motion to suppress evidence in a pending criminal prosecution. Appellee had been indicted for possessing, causing to be delivered by mail and disposing of L.S.D. tablets in violation of applicable federal statutes. The suppressed evidence consisted of a letter, a box of L.S.D. tablets, and an envelope in which the letter and tablets had been mailed.

On the morning of May 22, 1970 Mrs. Emma Hodges accepted from the Hebron, Kentucky post office a sealed, air mail special delivery letter that was addressed to her twenty-one year old son, the appellee. Appellee, who had been camping out alone for sometime, returned irregularly to the Hodges house where he maintained a room. Mrs. Hodges testified that she had been accepting mail for appellee for many years, but shortly before May 22 she informed the Hebron postmaster that she did not wish to receive any more mail for her son. The district court found that Mrs. Hodges accepted the letter at the specific request of the postmaster.[1] It is a fair inference that

---

1. According to the testimony at the hearing on the motion to suppress, Mrs.

Hodges asked the postmaster, "Is there any mail?" He replied, "Yes," and handed

appellee tacitly approved of her opening any of his mail that she "thought was important and that he should know." Mrs. Hodges did state, however, that to the best of her recollection she had previously opened letters only from appellee's draft board.

After accepting the appellee's letter and returning to her home, Mrs. Hodges peeled off the masking tape on the outside of the envelope and slit open the seal. She discovered that the envelope contained a small pill box and a letter from a girl in California named Pam.[2] Upon finding pills in the box, she telephoned her private attorney, a Mr. Funk, who had advised with her on many occasions, and who was also a part-time assistant county prosecutor of Boone County, Kentucky, stating that her son had received a letter and a "box of some kind of drugs." It was not disputed that Mrs. Hodges called Funk in his capacity as her private attorney rather than as county prosecutor, nor that Funk assumed that he had been called in that capacity. In response to her inquiry as to what she should do, Funk replied, "Bring it over here right away."[3] He then called the Chief of Police and asked him to come to his office. Mrs. Hodges testified that before going to Funk's office she resealed the masking tape so that the letter appeared not to have been opened. Either Mrs. Hodges or Funk reopened the envelope in the presence of the Chief of Police. Upon examination of the contents, including the letter which stated that the tablets were "acid," the Chief of Police took the tablets to the Kentucky State Police. The tablets were eventually delivered to a United States Postal Inspector who had several of them analyzed by a government chemist. The analysis showed that the tablets contained L.S.D., which fact was stipulated by the parties at the hearing. Thereafter, a complaint was issued and an indictment was returned against appellee. He never received the letter.

Appellee filed a motion to suppress the envelope and its contents. After an evidentiary hearing, the district judge issued an oral opinion in which he held that the circumstances related above constituted a violation of appellee's right of privacy. It was evidently the court's view that Mrs. Hodges was in some respect an agent of the United States when she accepted the air mail letter for delivery to her son and that the opening of the letter and the removal of the contents constituted an illegal search and seizure of which the government cannot now take advantage in criminal proceedings. The district court stated:

> I am of the opinion that the motion should be sustained. I think this was an invasion of the right of privacy of the recipient of this letter, addressee of this letter. Mrs. Hodges, his mother, was given the letter to deliver to him with the express understanding that she would do that. She had told them, the Postal Department, not to deliver any more of his mail to her and then she said—well, the postman gave her this letter and said, "Well, I will take this one and give it to him," or words to that effect. I think a person's right of privacy must be preserved. This is the same as a wiretapping case. The United States would not have a right to use information obtained by wiretapping if she had asked somebody to tap the wire and use that information. The Department here gave this letter to Mrs. Hodges for the ex-

---

the appellee's letter to Mrs. Hodges, asking, "Want this?" She responded, "Well, I will go ahead and take it today."

2. It turned out that the sender of the letter was Pamela Nadine Faber who was charged, in the same indictment returned against the appellee, with illegally using the mails and disposing of the L.S.D. tablets in violation of federal statutes.

3. There was conflicting testimony on the content of the conversation. Funk stated that he told Mrs. Hodges that he would have the police at his office to take the drugs. Mrs. Hodges indicated that she was not informed that Funk would call the police.

press purpose of delivering it to her son. She didn't do it. I don't think the United States can take advantage of that. I think it is an improper invasion of the rights of privacy of the defendant and I sustain the Motion to Suppress the evidence.

■ After reviewing the record, briefs, and relevant authority, we hold that the district judge erroneously sustained appellee's motion to suppress the envelope and its contents. It is axiomatic that the Fourth Amendment does not afford protection from searches by private individuals acting without instigation by or collusion with governmental authorities. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); United States v. Winbush, 428 F.2d 357 (6th Cir. 1970). *See generally* 36 A.L.R.3d 553 (1971). For many years Mrs. Hodges, with her son's tacit permission, had accepted and opened some of his mail, apparently because he lived away from home and came to his mother's house or into town only occasionally. In this capacity she accepted the envelope at issue here and inspected its contents. This search does not, in our view, contravene the Fourth Amendment as the government was not involved. We find no merit in appellee's argument that Mrs. Hodges' opening and perusal of the envelope and its contents were constitutionally invalid without a search warrant. Appellee relies on Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918), and Maxwell v. United States, 235 F.2d 930 (8th Cir. 1956), both interpreting mail theft statutes, for the proposition that mail is in the government's custody until actually received by the addressee. Accordingly, appellee reasons that Mrs. Hodges was in effect an agent of the government who, like her principal, could lawfully search first class mail only after securing a search warrant.

Appellee's argument ignores the fact that by acquiescence and practice he had given Mrs. Hodges permission to accept and open his mail. If anything, she was his agent rather than the government's agent. Appellee cites no case that controverts this conclusion. *Maxwell,* in fact, specifically reads the statute in question in that case as extending "federal protection over mail matter from the time it enters the mails until it reaches the addressee *or his authorized agent.*" 235 F.2d at 932 (emphasis added).

■ Mrs. Hodges' decision to take the envelope to her attorney, after she had opened it and observed the contents and the resulting inspection of the items by the private attorney-prosecutor and the Chief of Police, also involve no violation of the Fourth Amendment. The police need no search warrant to search an envelope and its contents brought to them by a private individual who, without governmental instigation, has previously opened and inspected the items and discovered and disclosed their contents. *Cf.* Bacon v. United States, 97 F. 35 (8th Cir. 1899). We attach no significance to the fact that Mrs. Hodges resealed the original masking tape on the envelope before giving it to Funk.[4] Her method of repackaging the items she had searched does not affect the legality of the subsequent government inspection.

■ We are also not persuaded by the argument that we should invoke our well-established supervisory power over the conduct of federal criminal proceedings and exclude the evidence because of the alleged governmental misconduct that could possibly be suggested by one reading of the facts. *See* McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). This contention interprets the facts as suggesting that Funk, as county prosecutor, somehow tricked Mrs. Hodges into surrendering the evi-

---

4. Although the original masking tape was replaced, the record suggests that the seal was still broken when Mrs. Hodges gave the envelope to the attorney-prosecutor Funk.

dence. Our reading of the record does not produce sufficient facts to merit that conclusion. Considering that "the court's inherent power to refuse to receive material evidence is a power that must be sparingly exercised," Lopez v. United States, 373 U.S. 427, 440, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963), we do not find sufficient facts of impropriety to require exclusion of the evidence. Nor are we persuaded by the suggestion that our supervisory power should be invoked to exclude the evidence because the attorney in his dual capacity had a conflict of interest and that such exclusion is necessary to preserve the integrity of the attorney-client relationship. The record is barren of any evidence that Funk in any way represented the appellee and we are not prepared to say on the present record either that the admission of the evidence would be inherently unfair with respect to the appellee, or that its exclusion would contribute to the integrity of the attorney-client relationship.

Finally, the privilege resulting from the attorney-client relationship between Mrs. Hodges and Funk cannot be invoked to exclude the envelope and its contents. Mrs. Hodges on her own initiative called Funk in his capacity as her private attorney. He in turn assumed that he was acting in that capacity and he advised turning the evidence over to the police. As stated, there is no evidence that he was acting as appellee's attorney. Commonwealth v. McKenna, 206 Pa.Super. 317, 213 A.2d 223 (1965); Logan v. Oliver, 96 A.2d 516 (D.C.Mun.App.1953). *See generally* 8 Wigmore, Evidence § 2321 (1961). It may be true that the facts of this case could possibly be read as casting some doubt on Funk's respect for the confidential nature of the attor-

ney-client relationship. Yet, under the situation confronting him, it is equally plausible to conclude that the attorney simply felt that his action and advice were in the best interest of Mrs. Hodges, his client, as well as consistent with his ethical duty as an attorney.[5]

Reversed.

---

5. It is also questionable that the attorney-client privilege is applicable in the case at bar since Mrs. Hodges, evidently not concerned with confidentiality, surrendered the evidence to Funk in the presence of the Chief of Police. For a suggestion that the attorney-client privilege is not ap-

plicable in this situation, see Leathers v. United States, 250 F.2d 159 (9th Cir. 1957).

