UNITED STATES of America,
Plaintiff,

v.

Jay A. BERGER, Defendant.

No. Cr. 1972–136.

United States District Court,
W. D. New York.

March 13, 1973.

John T. Elfvin, U. S. Atty. (David E. Flierl, Asst. U. S. Atty. of counsel), for Government.

Michael J. Brown, Buffalo, N. Y., for defendant.

CURTIN, District Judge.

In this criminal prosecution for violation of 21 U.S.C. § 841(a)(1), the defendant has moved to suppress the use as evidence of material seized from him when he was arrested, and of statements he made to a government agent prior to the arrest. The facts necessary to a determination of the motion are revealed by a stipulation entered into by counsel

and by testimony given at a hearing conducted November 6, 1972.

At approximately 8:00 p. m. on July 24, 1972, Donald Reiner, a baggage handler for United Airlines at O'Hare International Airport in Chicago, advised his supervisor, Robert Ryan, that he had noticed a sweet odor which he thought to be that of marihuana emanating from a bag transfer cart. Ryan observed a white substance which appeared to be talcum powder on the outside of one of four olive green duffle bags on the cart. Knowing that talcum powder is sometimes used to conceal the smell of marihuana, Ryan opened the bag. Inside he discovered a tan plastic bag which contained a vegetable or leafy substance which he suspected to be marihuana. Ryan thereupon called the federal Air Security Marshals and then directed that the four duffle bags be taken to the airline's lost and found department.

Responding to Ryan's call, Dennis Bretall and another marshal proceeded to the lost and found department, where they were told of Ryan's discovery. After reopening the bag Ryan had opened, Bretall contacted his superior, who in turn requested that Timothy Sack, a United States Customs agent, go to the lost and found department. Bretall then opened the other three duffle bags, finding that they contained the same substance as the first. Upon his arrival, Sack identified the substance as marihuana and directed Bretall and the other marshal to place their initials on the inside of each bag, reseal the bags and return them for normal baggage handling and transport to their destination, Buffalo International Airport.

Sack then by telephone advised the Buffalo Office of the Customs Agency Service that four bags containing marihuana were being transferred to Buffalo, specifying the number and time of arrival of the flight and the baggage handling numbers of the bags. Just prior to the arrival of the flight at Buffalo, a surveillance of the baggage claim area of the terminal was established by Agent John Brown III of the Buffalo Office of the Bureau of Narcotics and Dangerous Drugs and other federal agents. After observing the defendant pick up the four duffle bags from the baggage conveyor system, Brown approached him and claimed ownership of them. The defendant replied that the bags were his and, when Brown persisted and displayed a dummy baggage claim ticket, the defendant produced an airline ticket to which were attached claim tickets, the numbers of which corresponded to those on the bags. At this point, Brown signaled his fellow officers, who arrested the defendant.

■ Petitioner's first contention is that the search of his duffle bags in the absence of a search warrant was conducted in violation of the Fourth Amendment and that the contents of the bags must be suppressed as evidence.

The foregoing facts clearly show that the original search of one bag conducted by Ryan was a search by a private individual not subject to the restrictions imposed by the Fourth Amendment on searches by persons acting under governmental authority. Ryan opened the bag on his own initiative with only his fellow airline employee Reiner present. No government agent requested, viewed or even knew of the search. This fact distinguishes the case relied on by the defendant, Crongold v. United States, 367 F.2d 1 (9th Cir. 1966), and establishes the legality of Ryan's inspection of the bag. See United States v. Cangiano, 464 F.2d 320, 323–325 (2d Cir. 1972); Wolf Low v. United States, 391 F.2d 61 (9th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 136, 21 L.Ed.2d 119 (1968); Gold v. United States, 378 F.2d 588, 590–591 (9th Cir. 1967); United States v. Burton, 341 F.Supp. 302 (W. D.Mo.1972).

■ ■ Ryan's recital to the federal agents of his observations of the contents of one bag certainly provided probable cause for their subsequent search of that bag and the remaining three bags, *see* United States v. Cangiano, *supra*, 464 F.2d at 325, leaving only the ques-

tion whether the search was unconstitutional because it was not conducted pursuant to a search warrant. The search of the single bag was undoubtedly proper. The fact that the federal agents reopened it after Ryan had closed it is of no constitutional significance where his actions indicated an intention to reveal his findings to them. *See* United States v. Hodges, 448 F.2d 1309, 1312 (6th Cir. 1971); Wolf Low v. United States, *supra*; United States v. Durkin, 335 F. Supp. 922, 926 (S.D.N.Y.1971). The search of the remaining three bags presents a more difficult question, as there is nothing in the record indicating the airline personnel had either opened them or requested the federal agents to open them. *Compare* United States v. Averell, 296 F.Supp. 1004, 1008–1012 (S.D.N.Y.1969). Nevertheless, the court believes that the search was justifiable under the exigent circumstances facing the federal officers. The situation was not one in which there was no threat of removal of evidence or contraband, as in Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Rather, the relevant facts here are almost identical to those in Hernandez v. United States, 353 F.2d 624, 627 (9th Cir. 1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966). The marihuana was not detected by airline personnel until a short time before the defendant's flight was scheduled to depart, and it would have been difficult, if not impossible, to obtain a search warrant prior to take-off. Search without a warrant was therefore permissible. *See id.*; United States v. Marti, 321 F. Supp. 59, 65 (E.D.N.Y.1970).

The defendant's second contention may be disposed of in short fashion. It is that the statements made by him prior to his arrest when Agent Brown falsely claimed ownership of the duffle bags were obtained in violation of Miranda v. Arizona, 348 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which requires that, before being subjected to interrogation, a person "in custody . . . or otherwise deprived of his

freedom of action in any significant way," *id.* at 477, 86 S.Ct. at 1629, be informed that he has certain rights specified therein. Even if one were to concede that Brown's statements constituted questions rather than declarations, they did not occur in the context of custodial interrogation as the term is used in *Miranda*. *See* United States v. Small, 297 F.Supp. 582, 586 (D.Mass.1969).

The defendant's motion to suppress is denied.