**UNITED STATES of America,
Plaintiff,**

v.

**Stephen M. ISSOD, Defendant.**

**No. 72–CR–130.**

United States District Court,
E. D. Wisconsin.

March 8, 1974.

---

———◆———

David J. Cannon, U. S. Atty. by D. Jeffrey Hirschberg, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

William M. Coffey, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

The defendant Stephen M. Issod was arrested by federal agents of the Bureau of Narcotics and Dangerous Drugs (hereinafter "BNDD") on February 4, 1972, and has been indicted for possession of marijuana, in violation of Title 21 U.S.C. § 841(a)(1). The matter is before me now on defendant's motion to suppress quantities of marijuana and hashish seized during that arrest as having been obtained in violation of the Fourth Amendment.

Issod was arrested while removing two large trunks from an air freight terminal at the Milwaukee Municipal Airport. Some forty-two hours before that arrest, an agent of the California Bureau of Narcotic Enforcement had determined that the two trunks contained approximately 83 kilograms of marijuana. The sequence of events leading to the arrest has been stipulated to.

At approximately 6:20 P.M. on February 2, 1972, agent C. J. McLaughlin of the California Bureau of Narcotic Enforcement was called to the United Airlines Freight Terminal at the San Diego airport. Upon arrival, McLaughlin conferred with a United Airlines Freight agent who told him that an hour earlier a woman identifying herself as Linda Silverstein had brought two large trunks to the terminal. She had arranged to ship them to Milwaukee, requesting that they be held for pickup at the municipal airport. The freight agent told McLaughlin that he had become suspicious because the woman had been reluctant to provide a Wisconsin address and because she appeared to be extremely nervous throughout the transaction. Immediately after conferring with agent McLaughlin, the airline employee opened one of the trunks and found what he believed to be marijuana. The second trunk was opened and McLaughlin determined that they did, in fact, contain marijuana. The parcels were then resealed for shipment to Milwaukee.

The next day, February 3, 1972, McLaughlin telephoned Special Agent Streicher of the Milwaukee office of the BNDD to advise him of the shipment. McLaughlin provided a detailed description of the trunks and their contents as well as shipping information. He stated that the shipment had left San Diego at 7:25 that morning on a United Airlines flight to Los Angeles. He further informed Streicher that the trunks had then departed Los Angeles on board United flight number 588 which was to arrive in Milwaukee at 4:50 P.M.

BNDD agents met the flight and escorted the shipment to the United Airlines freight terminal. Continuous surveillance of the trunks was maintained from 5:30 P.M. throughout the afternoon and evening. At 1:00 A.M. on February 4, 1972, the trunks were placed in a sealed police van and then returned to the freight terminal at 6:00 A.M. The surveillance was continued throughout the day.

At 3:05 P.M. on February 4, 1972, the defendant and Linda Silverstein arrived at the United Airlines freight terminal. Silverstein presented the consignment documents and arranged to take possession of the two parcels. Special Agent Streicher, wearing a United Airlines work uniform, assisted the defendant and Silverstein to load the two trunks into their automobile. At that point BNDD agents and Milwaukee police placed the two under arrest. Streicher searched the defendant and found approximately 10.25 grams of a substance purported to be hashish in a jacket pocket.

 The defendant asserts that the parcels were seized by BNDD authori-

ties on arrival at Milwaukee and that the failure to secure a search warrant for that seizure was in violation of the Fourth Amendment. If this court were to limit its inquiry to the actions of the BNDD agents in Milwaukee, the defendant's argument would be persuasive. The federal agents were acting on information received prior to the arrival of the shipment in Milwaukee, and the parcels were under the careful and exclusive control of the BNDD from the moment of arrival for a period of some twenty-two hours. There was, in fact, a seizure by government agents. The Government has not attempted to show exigent circumstances to avoid the requirement of a warrant, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), nor does it appear that such a showing could be made.

The controlling factor under the circumstances of this case, however, is the validity of the California search. An appropriate analysis must look to the search that took place at the San Diego airport on February 2, 1972. All measures taken by the federal authorities in Milwaukee were solely and directly based on the information developed in the San Diego search. If that search without a search warrant was in violation of the Fourth Amendment, then the evidence subsequently obtained in Milwaukee is inadmissible regardless of the procedure followed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)

█ The initial question before this court is whether the involvement of California state agent McLaughlin in the San Diego search was such that the operation should be viewed as a government search. The Fourth Amendment does not protect against searches and seizures conducted by private parties without government involvement. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). It has long been recognized, however, that when a federal officer participates in a search effort, the undertaking will be viewed as a governmental search invoking the protection of the Fourth Amendment. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927). A search conducted by a state officer is a governmental search, held to the same constitutional standard. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

█ The requirements of the Fourth Amendment against unlawful searches and seizures have small significance if they can be avoided by quietly delegating the physical motions of the search to a private party. A search cannot be viewed as a purely private action if it was encouraged or ordered by government officers. There must be a showing that any involvement of government officers did not influence the actions of a private party. Coolidge v. New Hampshire, supra.

Prior knowledge by government authorities that a search would be conducted is a crucial factor in determining government influence. Courts holding a seizure of evidence to be a private action have consistently looked to the lack of prior awareness on the part of authorities. Burdeau v. McDowell, supra; United States v. Harper, 458 F.2d 891 (7th Cir. 1971), cert. denied 406 U.S. 930, 92 S.Ct. 1772, 32 L.Ed.2d 132 (1971); United States v. Billingsley, 440 F.2d 823 (7th Cir. 1971), cert. denied 403 U.S. 909, 91 S.Ct. 2219, 29 L. Ed.2d 687 (1970). On the other hand, where a private seizure is preceded by contracts with government officers, influence may be inferred. Knoll Associates, Inc. v. Federal Trade Commission, 397 F.2d 530 (7th Cir. 1968); United States v. Stein, 322 F.Supp. 346 (N.D.Ill.1971). In the present case, no search was made until after McLaughlin arrived at the terminal. No attempt was made to search until after the airline employee had discussed the situation with agent McLaughlin. The Government has made no effort to show that this conversation did not influence the employee's decision to open the trunks.

■ When a search has no other purpose than to further a government investigation, it must be considered to be within the scope of the Fourth Amendment. Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); Knoll Associates v. Federal Trade Commission, supra; Corngold v. United States, 367 F.2d 1 (9th Cir. 1966). The fact that the California Bureau of Narcotics was notified indicates the United Airlines freight agent suspected the trunks contained contraband narcotics. There is no indication that such material posed any threat to the safety or efficiency of airline operations. Enforcing the law with respect to controlled substances is the business of law enforcement agencies, not airlines. It is an entirely different matter when an employee inadvertently discovers evidence while engaged in a regular course of duties unrelated to criminal investigation.*

■ The question of government involvement need not turn on influence or the character of the search. Agent McLaughlin's active participation requires that the San Diego search be viewed as a government undertaking. The controlling authority is Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). In *Lustig* a federal officer went to the scene of a search already in progress. Upon arrival he assisted in evaluating the evidence found. The court held his involvement was sufficient to invoke the Fourth Amendment saying "So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it." 338 U.S. 74 at 79, 69 S.Ct. at 1374.

The facts presented indicate agent McLaughlin was there not only before the object was accomplished but from the very beginning. The intent was to find out if the parcels contained contraband material. It was McLaughlin who actually determined the contents to be marijuana. His direct role in the matter requires that it be viewed as a governmental search.

■ The second question before this court is whether there was probable cause to conduct a government search at the San Diego freight terminal. The answer must be no. The information presented to McLaughlin was that the woman delivering the parcels had been hesitant about providing a Wisconsin address and had been very nervous. If it is presumed the freight agent can accurately gauge nervousness in his customers, the presumption cannot extend to an ability to discern the cause of that demeanor. Upon the facts presented, without more, a reasonable person could not conclude that the trunks probably contained contraband. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); cf. United States v. Allen, 349 F.Supp. 749 (N.D. Cal.1972); United States v. Lopez, 328 F.Supp. 1077 (E.D.N.Y.1971). Even if a search warrant had been obtained, the San Diego search would have been in violation of the Fourth Amendment, and it was certainly in violation of the Fourth Amendment when no legal search warrant was obtained.

■ Had there been probable cause to conduct a governmental search at the San Diego airport, the question of a warrant would remain. In the normal course of matters a search may only be made on authority of a warrant. The burden is on the Government to show a need to depart from the procedure set out in the Constitution. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). The shipment did not leave San Diego until some thirteen hours after agent McLaughlin received his information from the United Air-

---

* Examples of this situation would include search of an emergency room patient by a hospital attendant to facilitate treatment, United States v. Winbush, 428 F.2d 357 (6th Cir. 1970), and inspection of a parcel post package to check for apparent damage, United States v. Tripp, 468 F.2d 569 (9th Cir. 1972), cert. denied 410 U.S. 910, 93 S.Ct. 965, 35 L.Ed.2d 272 (1973).

lines employee. I can only conclude that the reason no search warrant was obtained in that period was that agent McLaughlin concluded that, in a legal sense, there was not probable cause to obtain one.

The fact that the trunks could be transported did not, of itself, create a real risk that they would have disappeared before a warrant could be obtained because the trunks were then under the control of United Airlines.

█ The surveillance conducted by agents of the BNDD at the Milwaukee airport and the subsequent arrest of the defendant were the direct result of an unlawful search which was conducted in violation of the Fourth Amendment. The defendant's motion to suppress must be granted.

For the above reasons,

It is ordered that the defendant's motion to suppress be and it hereby is granted.