Commonwealth *v.* Kozak, Appellant.

Argued November 16, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stanton D. Levenson,* with him *Watzman, Levenson & Snyder,* for appellant.

*Gordon L. Young,* with him *Robert L. Eberhardt,* Assistant District Attorney, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 31, 1975:

Following a non-jury trial, the appellant, Dolores J. Kozak, was found guilty of possession of marijuana and possession with intent to deliver marijuana.[1] She con-

---

1. Appellant was arrested for violation of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P. L. 233, No. 64, §1 (35 P.S. §780-101) *et seq.*

tends that the search and seizure by the private individual of two suitcases containing the marijuana was unlawful and that the evidence obtained should have been suppressed, and that the search made pursuant to the warrant was also invalid because the warrant was based on illegally obtained information. We find no merit in these contentions and will, therefore, affirm the judgment of the lower court.

The facts reveal the following: early in the morning of May 3, 1973, Stephen Patrick, an employee of Trans World Airlines (TWA), noticed two suitcases sitting some distance from the baggage claim area of the airport. Mr. Patrick assumed the bags were misplaced, and since one of his responsibilities as a TWA employee was returning lost luggage to the proper owners, he placed these suitcases in his car with other luggage to be delivered.

By the time Mr. Patrick's work shift was over, the lost and found department was closed. He took the luggage to his house and opened the suitcases in an attempt to discover the identity of the owner. Although his search of the luggage failed to reveal the owner, he did find a number of packages wrapped in paper and plastic bags. He opened one of the packages and found a sweet smelling, grassy, leafy material. Mr. Patrick's experience with drugs was limited, and he was unable to make a positive identification of the substance. He did, however, suspect that the material was marijuana. He closed the suitcases and called his supervisor who in turn notified the police. Experienced narcotics agents were sent to Mr. Patrick's home to investigate.

Mr. Patrick showed the police the suitcases and explained what had happened. Although it is not clear from the record whether Mr. Patrick reopened the first suitcase or whether the police officers reopened it, the lower court found that Mr. Patrick reopened at least one of the suitcases. The officers examined the contents and im-

mediately determined that the packaged substance was marijuana. The suitcases were closed and taken to the lost and found department at the airport where they were kept under surveillance. A search warrant was obtained and appellant was arrested when she claimed the luggage.

Appellant moved to suppress the evidence seized as a result of the search at Mr. Patrick's house on the ground that the search was conducted by police without a warrant. She also moved to suppress all the evidence seized at her arrest, alleging that the warrant used was invalid because it had been obtained as a result of information arising from an illegal search.

Although this case involves issues that present virgin territory beyond the expanding frontiers of the law in the Commonwealth, the points have been frequently covered by the federal courts.[2] It is well settled that a search conducted by a private individual is not subject to the restraints of the Fourth Amendment to the United States Constitution. *Burdeau v. McDowell*, 256 U.S. 465 (1921); *Commonwealth v. Dingfelt*, 227 Pa. Superior Ct. 380, 323 A.2d 145 (1974). However, a search initiated by a private citizen may lose its immunity if the police take an active part. *Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966). Therefore, in order to agree with appellant that the warrantless search at Mr. Patrick's house was unlawful and that the evidence found should have been suppressed, we would have to find that the

---

2. *See United States v. Capra*, 501 F.2d 267 (2d Cir. 1974); *United States v. Echols*, 477 F. 2d 37 (8th Cir. 1973), *cert. denied*, 414 U.S. 825 (1973); *Cash v. Williams*, 455 F.2d 1227 (6th Cir. 1972); *United States v. Hodges*, 448 F.2d 1309 (6th Cir. 1971); *Wolf Low v. United States*, 391 F.2d 61 (9th Cir. 1968), *cert. denied*, 393 U.S. 849 (1968); *United States v. Issod*, 370 F. Supp. 1110 (E.D. Wis. 1974); *United States v. Berger*, 355 F. Supp. 919 (W.D. N.Y. 1973); *United States v. Coles*, 302 F. Supp. 99 (D. Me., N.D. 1969); *United States v. Small*, 297 F. Supp. 582 (D. Mass. 1969).

police participated to such an extent as to make the search a police action. This we do not find.

We are not dealing with a case wherein the police requested the search, *Corngold v. United States, supra;* aided the private citizen in making the search, *United States v. Issod,* 370 F. Supp. 1110 (E. D. Wis. 1974) ; exercised some control over the area to be searched, *United States v. Small,* 297 F. Supp. 582 (D. Mass. 1969) ; or allowed the search to be conducted while the object searched was in government custody, *Cash v. Williams,* 455 F.2d 1227 (6th Cir. 1972). We are instead dealing with a search made entirely by a private citizen on his own initiative with no police participation or control during the search.

Mr. Patrick opened the unlocked suitcases and searched them in his home in an attempt to ascertain the owner's identity. This was standard procedure as part of his job with the lost and found department of TWA. There is no doubt that the police were not in the house when Mr. Patrick first opened the suitcases, did not request the initial search, and had no knowledge of the search until Mr. Patrick's supervisor called them. These factors evidence a lack of police participation.

In the case of *United States v. Issod, supra,* a girl delivered two large trunks to a United Airlines Freight Terminal, to be shipped from California to Milwaukee. Due to the girl's actions and nervous behavior, the airline employee became suspicious and contacted a narcotics agent. After the agent arrived on the scene and conferred with the airline employee, the employee opened the trunks for the first time. The agent then determined that the trunks did contain marijuana.

Although this search after consultation with the narcotics agent renders *Issod* easily distinguishable from the present case, the court there discussed government intervention in a private search. The court stated: "A search cannot be viewed as a purely private action if it

was encouraged or ordered by government officers. There must be a showing that any involvement of government officers did not influence the actions of a private party. (Citation omitted).

"Prior knowledge by government authorities that a search would be conducted is a crucial factor in determining government influence. Courts holding a seizure of evidence to be a private action have consistently looked to the lack of prior awareness on the part of authorities. (Citations omitted)." 370 F. Supp. at 1113.

The court went on to say: "When a search has no other purpose than to further a government investigation, it must be considered to be within the scope of the Fourth Amendment. (Citations omitted). . . . It is an entirely different matter when an employee inadvertently discovers evidence while engaged in a regular course of duties unrelated to criminal investigation." 370 F. Supp. at 1114.

These guidelines cover the case at bar completely. Mr. Patrick conducted the search as part of his employment duties and not to further a criminal investigation. The police had no influence over the initial search and actually had no prior notice that the search was taking place.

The case of *United States v. Echols*, 477 F.2d 37 (8th Cir. 1973), *cert. denied*, 414 U.S. 825 (1973), presents a situation analogous to that facing us. A TWA employee opened an apparently misplaced travel bag in an attempt to ascertain the owner's identity. During the search of the bag, the employee found a revolver and subsequently alerted a deputy United States Marshal who, after examining the bag and observing the gun, seized it as evidence. In discussing the contention that the search was actually conducted by the police and that the evidence should not have been admitted because there was no warrant, the court noted: "There is not a scintilla of evidence that any government agent requested that the search be made, was present when the travel bag was

opened, or had any knowledge concerning the activity until after the gun had been discovered." 477 F.2d at 40.

Even though the marshal did not have a warrant when he examined the travel bag and seized the revolver, the court refused to exclude this evidence. As in the present case, the search was completed before the police intervened and their belated presence did not affect the validity of the initial search or of the subsequent examination.

In her attempt to have the search declared invalid, appellant places great weight on her contention that the suitcases were closed by Mr. Patrick after he made his initial search and the police were thus required to reopen them before they could examine the evidence. She would have us hold that this reopening of the suitcases constituted a separate search by the police which fell within proscription of the Fourth Amendment.

While there is some question as to who reopened the suitcases on the arrival of the police, the ultimate validity of the entire proceedings will remain unassailed regardless of who was the moving force behind the reopening of the suitcases. This problem was dealt with in the case of *Wolf Low v. United States*, 391 F.2d 61 (9th Cir. 1968), *cert. denied*, 393 U.S. 849 (1968). In *Wolf Low*, airline employees became suspicious of the contents of several pieces of luggage and opened them. Inside they found watch movements. They then notified the customs officers that they had found something which appeared suspicious. The customs officers came to the airport, examined the suitcases and the watch movements inside, and later arrested defendant as a result of these observations.

The court noted that the record was unclear as to whether the lids of the suitcases were physically lifted by airport employees or by the customs officers. The court, however, dismissed this question, holding that the search had already been completed when the officers arrived on the scene. The court stated: "The airport employees had

no thought of returning the suitcases to the passenger without first getting the opinion of the customs officers as to whether the airline was being used for the transportation of contraband." 391 F.2d at 63.

That is exactly the situation with which we are dealing. The airline employee had conducted the search and found what he believed to be marijuana. He requested police aid to confirm his belief. The suitcases had already been opened and the packaging around one of the blocks of marijuana had been torn apart before the police arrived. The police expert could identify the drug immediately after the lid was lifted. Even if we assume the police did lift the suitcase lids in order to view the contents, under these circumstances, we will not construe that act as an entirely new and separate search, nor will we include it as part of Mr. Patrick's initial search.

The case of *United States v. Berger*, 355 F. Supp. 919 (W. D. N.Y. 1973), also dealt with this question. The facts of *Berger* reveal that a United Airlines baggage handler at O'Hare International Airport in Chicago noticed a sweet odor emanating from a bag transfer cart. After notifying his supervisor that he suspected the bags contained marijuana, the employee opened one of four green duffle bags on the cart. Inside he found what appeared to be marijuana. He closed the bag and notified Federal Air Security Marshals.

When the marshals arrived, they reopened the bag that had already been searched as well as the remaining three bags and identified the contents as marijuana. The bags were then marked, resealed, and sent to their destination, under surveillance. When defendant attempted to claim the bags, he was arrested.

In upholding the validity of the entire proceeding, the court stated: "The search of the single bag was undoubtedly proper. The fact that the federal agents reopened it after [the airline employee] had closed it is of no constitutional significance where his actions indicated

an intention to reveal his findings to them. (Citations omitted)." 355 F. Supp. at 921.[3] In the case at bar, Mr. Patrick revealed his findings to the police officers before they examined the evidence. Regardless of who reopened the suitcases, Mr. Patrick's search was valid.

In accord is *United States v. Hodges*, 448 F.2d 1309 (6th Cir. 1971). Mrs. Hodges, the defendant's mother, accepted a letter from the postmaster addressed to the defendant. She opened the letter and found a small box of pills. She then telephoned her attorney[4] who told her to bring the pills to his office. This lawyer then called the Chief of Police and asked him to come to his office. Mrs. Hodges had resealed the envelope and either she or the attorney reopened the letter in the presence of the Police Chief. In discussing the propriety of the search at the office, the court stated: "Mrs. Hodges' decision to take the envelope to her attorney, after she had opened it and observed the contents and the resulting inspection of the items by the private attorney-prosecutor and the Chief of Police, also involved no violation of the Fourth Amendment. The police need no search warrant to search an envelope and its contents brought to them by a private individual who, without governmental instigation, has previously opened and inspected the items and discovered and disclosed their contents. (Citation omitted). We attach no significance to the fact that Mrs. Hodges resealed the original masking tape on the envelope before giving it to [her attorney]. Her method of repackaging the items she had searched does not affect the legality of the sub-

---

3. While the court did discuss exigent circumstances, this was done only to justify the immediate warrantless search of the remaining three bags which had not been opened by a private individual. This discussion had no bearing on the search by the marshals of the first bag.

4. The attorney also served as a part-time assistant county prosecutor. However, it was not disputed that Mrs. Hodges called this attorney in his capacity as her private attorney.

sequent government inspection." 448 F.2d at 1312. Once the search by the private citizen is completed, the package (suitcase, envelope, box, trunk, etc.), is closed or resealed, and the police are notified, subsequent warrantless examination of the evidence already found will not render the evidence inadmissible, even if the authorities are required to reopen the package.

Other Federal cases have affirmed private searches where official influence was much more extensive than in this appeal. The cases of *Gold v. United States,* 378 F.2d 588 (9th Cir. 1967) and *United States v. Cangiano,* 464 F.2d 320 (2d Cir. 1972), vacated on other grounds, 413 U.S. 913 (1973, *aff'd,* 491 F.2d 905 (2d Cir. 1973), are examples wherein officials have in effect been the moving force behind the searches. In both cases, Federal Bureau of Investigation agents suspected that obscene material was contained in air freight packages. They notified the air freight employees that they believed the contents of the packages were not as listed and that the addresses on the waybills were false. After receiving this information, airline employees opened the packages, found obscene material (films), and notified the FBI. The agents returned, examined the evidence, secured warrants, and made the arrests. The courts upheld this procedure on the premise that the employees had a right to open the packages even without the FBI tip. The police intervention in the present case did not even remotely approach that amount of intervention permitted in the above two cases.

Finally, the case of *United States v. Capra,* 501 F.2d 267 (2d Cir. 1974), also permitted officials to aid a private citizen in a search. A railroad employee opened a suitcase because he thought it contained a bomb, but found instead heroin and cocaine. He notified the police who assisted in the identification of the drugs. The court noted in a footnote: "And when police are merely assisting a private party, who has authority to search and

a legitimate need to do so, (Citation omitted), courts are reluctant to exclude resulting evidence. (Citations omitted)." 501 F.2d at 273, n. 4.

We are aware that there were no pressing exigent circumstances involved in the present case. However, we believe the rule should be where the search is begun and completed by a private citizen before the police are even aware that a search is being made, and where the police did nothing more than confirm the suspicions of the private citizen, a warrant is not required.

We will now turn our attention to appellant's second contention: that the evidence seized by the police at the time of appellant's arrest must be suppressed because the search warrant used to obtain the evidence was based on illegally obtained information. We have already determined that the search made at Mr. Patrick's house was an entirely private action, free from government intervention. After the police examined the evidence discovered by Mr. Patrick and determined that they had sufficient probable cause to obtain a search warrant, they did secure a warrant before the search of the suitcases at the time appellant claimed the luggage. As we find no problem with the initial search and the subsequent police participation, we find the warrant also valid. The probable cause was based on information from a legal search and was more than ample to support the warrant.

Judgment of sentence of the lower court is affirmed.

---

DISSENTING OPINION BY JACOBS, J.:

I respectfully dissent.

The appellant Dolores J. Kozak was arrested on May 4, 1973, for violation of The Controlled Substance, Drug, Device and Cosmetic Act[1] and was subsequently found guilty by a judge sitting without a jury of possession of

---

1. Act of April 14, 1972, P.L. 233, No. 64, §1, 35 P.S. §§780-101—780-144 (Supp. 1974-75).

marijuana and possession with intent to deliver marijuana, 35 P.S. §780-113. She maintains that the search and seizure by the police of two suitcases containing the marijuana was unlawful and the evidence obtained should have been suppressed. I am constrained to agree with appellant in this case, and would suppress the evidence as a product of an unlawful, warrantless search and seizure.

In the small hours of the morning of May 3, 1973, Stephen Patrick, an employee of Trans World Airlines whose major responsibility was to supervise the handling of baggage moving on the airlines, observed two suitcases resting some distance from the baggage claim area of the terminal, apparently mislaid. Since Mr. Patrick also conducted a daily operation of delivering lost or mishandled luggage to the owners as a sideline to his regular duties, he was familiar with the handling of such luggage and at the time he discovered the suitcases in question, he already had a number of other lost bags in his car for delivery. Therefore, instead of removing the two bags to the lost and found, which was closed at that hour, Mr. Patrick added them to the others in his car and, after completing his regular job and the deliveries of the other lost baggage, took them to his house. There his testimony indicates he first opened the bags to determine if there was any additional identification besides the baggage claim ticket affixed to the outside. The bags contained plastic and paper wrapped packages which curiosity prompted him to open. Inside was a grassy, leafy material which he testified had a sweet smell. Although Mr. Patrick, due to his limited experience in such matters, was unable to identify it, the substance aroused his suspicions that the suitcases actually contained marijuana. At this point Mr. Patrick determined that he needed assistance. The suitcases were closed again and the police were informed that a TWA employee was in possession of two suitcases suspected of containing marijuana.

Officers familiar with narcotics work were dispatched to Mr. Patrick's house to investigate the matter. Mr. Patrick explained the situation to them and then showed them the two closed bags. It is unclear from the record whether the officers actually opened the first suitcase or whether Mr. Patrick opened it for them. However, the lower court found that Mr. Patrick opened at least one of the suitcases and the officers investigated its contents, determining that the packaged substance was indeed marijuana. The bags were then returned to the lost and found where they were kept under surveillance. A search warrant was obtained, and the defendant was arrested when she attempted to claim the bags. Appellant moved to suppress the evidence revealed in the search of the luggage in Mr. Patrick's home on the grounds that the search was unlawful because it was not conducted pursuant to a warrant and no exceptions to the constitutional requirement justified the lack of a warrant.[2] She further moved to suppress all the evidence sought and seized at her arrest on May 4, 1973, on the grounds that the warrant under which the search was made had been issued as a result of evidence obtained in the prior illegal search.

It is apparent that the validity of the first search conducted in Mr. Patrick's home must be upheld if any of the evidence complained of is to be admitted in this case.[3] The facts advanced as probable cause, stated in the affidavit upon which the search warrant issued, are simply a recitation of the details of the first warrantless, exploratory search. Without that information, no independent basis could be found to arrest or search the appellant.

2. U.S. Const. amends. IV and XIV, §1; Pa. Const. Art. I, §8.

3. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *Commonwealth v. Dembo*, 451 Pa. 1, 301 A.2d 689 (1973) for the principle that evidence secured through the exploitation of information obtained in an illegal search is inadmissible as fruit of that illegality.

The court below concluded that the initial search had been performed by a private individual unconnected with governmental wrongdoing and admitted the evidence of his discoveries and the subsequent police search at trial. Since the fourth amendment protection against unreasonable searches and seizures is designed to protect the citizen against arbitrary governmental action, it has been held that its limitations do not extend to searches by a private citizen. *Byars v. United States*, 273 U.S. 28 (1927) ; *Burdeau v. McDowell*, 256 U.S. 465 (1921) (*But see* dissenting opinion by Justice BRANDEIS in which Justice HOLMES concurs) ; *Commonwealth v. Dingfelt*, 227 Pa. Superior Ct. 380, 323 A.2d 145 (1974). The fruits of an individual's search, where the search is not at the behest or with the assistance of official agency, are not subject to suppression. *Burdeau v. McDowell*, supra. Mr. Patrick, as an employee of TWA, was a private citizen and when he opened appellant's bags for his own purposes he was not in violation of appellant's fourth amendment rights. Had the evidence admitted at trial been the product of this search alone, I would have no dispute with the outcome of the case. But Mr. Patrick did not search and secure the evidence of contraband entirely on his own. Upon uncovering those perplexing packages he called for governmental assistance in completing the search and identifying the evidence.

The police received information of a TWA employee's suspicion that he had discovered some suitcases containing contraband. His relation to the officers of circumstances which would make it appear highly probable that his suspicions were justified cast him in the position of an informer, *Cash v. Williams*, 455 F.2d 1227 (6th Cir. 1972) ; *United States v. Small*, 297 F. Supp. 582 (D.C. Mass. 1969), and it is the action of the police at this point that is the critical issue in the case. *United States v. Valen*, 479 F.2d 467 (3d Cir. 1973). A search reasonable and lawful at its inception may broaden to violate

the fourth amendment as its scope expands. *Terry v. Ohio,* 392 U.S. 1 (1968) ; *United States v. Small,* supra. Since the police in this case did not pause to obtain a warrant to conduct a search of the suitcases, it is necessary to consider whether their actions in pursuing the information obtained constituted a search.

In *Lustig v. United States,* 338 U.S. 74 (1949), the Supreme Court considered the question of how much participation by federal officers will render a search which initially does not violate the fourth amendment unlawful. The decision concerns the interaction of state and federal officials at a time when searches by state officials were not subject to the fourth amendment. Since private citizens occupy an identical position with regard to the fourth amendment, the court's delineation of a search in that case is instructive. "[A] search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter.[4] The decisive factor . . . is the actuality of a share by a federal official in the total enterprise of secur-

---

4. In *Elkins v. United States,* 364 U.S. 206 (1960) the Supreme Court overruled the "silver platter" doctrine which developed from the phrase first turned in *Lustig v. United States,* 338 U.S. 74 (1949). In *Elkins* the Court held that since the case of *Wolf v. Colorado,* 338 U.S. 25 (1949), decided on the same day as *Lustig* incidently, made the fourth amendment prohibition against unreasonable searches and seizures applicable to state officials through the fourteenth amendment, evidence unlawfully seized by state officers was inadmissible in a federal trial. This decision was designed to avoid a conflict between state and federal law enforcement and interpretation created by diverse evidentiary rulings dependent upon federal participation in a search. The solution reached was to render all evidence seized by any governmental agent in violation of a person's right to freedom from unreasonable search inadmissible. This decision however has no effect on *Lustig's* applicability to the present circumstances since a private person's unreasonable search is still not subject to constitutional restrictions.

ing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it. . . . The fact that state officers preceded [the federal officers] in breach of the rights of privacy does not negative the legal significance of this collaboration in the illegal enterprise before it had run its course." *Id.* at 78-79 (footnote added).

In the present case the police were shown two closed suitcases suspected of containing marijuana. The suitcases were unlatched and opened either by the officers themselves or for their benefit by the airline employee. The contents of the inner packages was then examined and pronounced contraband by the expert narcotics officers. It is undisputed that the suitcases were entitled to fourth amendment protection against unreasonable searches. What a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States,* 389 U.S. 347, 351 (1967). Even though this privacy was violated first by the intrusions of a private individual, exempt from fourth amendment prohibitions, the conduct of the police in reopening the bags and examining the suspicious contents on their own initiative for the purpose of identifying it to further governmental ends, constitutes participation by officials in the securing of evidence against the defendant. Such action is as much a search in these circumstances as it would be if any informer communicated the belief that a certain parcel in a carrier's hands contained contraband. *See Commonwealth v. Dembo,* 451 Pa. 1, 301 A.2d 689 (1973) ; *Corngold v. United States,* 367 F.2d 1 (9th Cir. 1966). The officers here were not passive recipients of the fruits of a private investigation, as they were in *Burdeau v. McDowell,* supra, the case which established the freedom of private persons from

the strictures of the fourth amendment. On the contrary, they were critically involved in the investigation and identification of the evidence concealed in the suitcases.

Although there are no cases in Pennsylvania resolving the issues presented by the facts of the instant case, the Supreme Court's views in *Commonwealth v. Dembo,* supra, and decisions in other jurisdictions give some guidance. In *Commonwealth v. Dembo,* the Supreme Court held that the opening of fourth class mail by postal employees pursuant to a governmental investigation of the defendant was contrary to the fourth amendment and the marijuana discovered was found inadmissible. The Court, noting that the right to be free from unreasonable search and seizure must be vigorously protected stated: "[t]he record is barren of any facts that would have permitted the police officials . . . to open this parcel and examine its contents. The Commonwealth seeks to sustain the search relying upon the fact that the postal authorities physically opened the package and not police officials. The Fourth Amendment reaches the very core of the American concept of the dignity of the individual, thus to allow its protection to be defeated by the most obvious subterfuge would reflect little deference to a heritage we have given so much to sustain." *Commonwealth v. Dembo,* supra at 7-8, 301 A. 2d at 693.

A case factually similar to the one at hand is *Cash v. Williams,* 455 F. 2d 1227 (6th Cir. 1972). There a wrecker operator who had towed an automobile to his garage, was searching the car for some indication of ownership when he discovered some bags containing a grassy substance. He left the items in the car and called the police to identify it. The court held that the search by the police had to meet the constitutional criteria to admit its fruits into evidence even though the initial search was by a private citizen. The garageman was no more than an informer who had come across information which he wished to reveal to the authorities and since the police

search could not be justified by any recognized exception to the warrant requirement, a warrant should have been obtained.

In *United States v. Issod,* 370 F. Supp. 1110 (E. D. Wis. 1974), an airport employee became suspicious of some trunks left for shipment and informed the police of his apprehension. The employee opened the trunks, found what he believed was marijuana and requested the police to investigate. The evidence that resulted was suppressed, the court noting the warrantless search by the police was official, performed strictly to further the governmental purpose of identifying contraband which posed no threat to the airline, and was therefore subject to the requirements of the fourth amendment. The initiation of the search by private parties provided no justification to the police.

These cases and others, *see, e.g., Williams v. State,* 501 P.2d 841 (Okla. 1972) ;[5] uphold the principle that officers of the law cannot use a private person to circumvent the warrant requirement and accomplish that which is impermissible in another circumstance where the officer is acting alone. An individual's right to privacy and freedom from unreasonable search may yield when a private person uncovers evidence in an unofficial examination of the individual's effects. But when the police are called to participate in the gathering of evidence and to take charge of a search for contraband, they have introduced the official element of the police force into the event and the fourth amendment protection will not permit them to rely upon the immunity of the private person who initiated the search.

In this case there was no excuse for the failure to obtain a warrant. The defendant was not yet located so the search was not incident to any arrest. *Chimel v.*

---

5. *See, contra, United States v. Echols,* 477 F.2d 37 (8th Cir. 1973); *United States v. Burton,* 475 F.2d 469 (8th Cir. 1973); *Wolf Low v. United States,* 391 F.2d 61 (9th Cir. 1968).

*California,* 395 U.S. 752 (1969). Nor was valid consent obtained from anybody. *See, e.g., Corngold v. United States,* supra. Furthermore, the police were not in an emergency situation such as had been found to justify other similar searches. *See, e.g., United States v. Berger,* 355 F. Supp. 919 (W. D. N. Y. 1973) ; *People v. Thompson,* 25 Cal. App. 3d 132, 101 Cal. Rptr. 683 (1972); *People v. Howard,* 21 Cal. App. 3d 997, 99 Cal. Rptr. 47 (1971). Here there was no possibility the suitcases would be carried away before a warrant was obtained. The bags were not even at the airport but were being held at the airline employee's house. Nor did the bags pose any threats to the airline or to any person's safety. *Cf. United States v. Wilkerson,* 478 F.2d 813 (8th Cir. 1973). There was therefore no pressure of time requiring a warrantless search to be conducted on the basis of the information received.

I can find no justification for the warrantless search of appellant's effects by the police. Consequently I would have suppressed the evidence seized as a result of that search as well as that seized pursuant to the warrant which was issued on a statement of facts obtained from the first illegal search.

I would reverse the judgment of sentence and grant a new trial.

HOFFMAN and SPAETH, JJ., join in this dissenting opinion.