## Commonwealth *v.* Eshelman, Appellant.

224 

Submitted March 20, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

 

*Thomas M. Reese,* Assistant Public Defender, for appellant.

*William J. Haberstroh,* Assistant District Attorney, and *Amos C. Davis,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., September 22, 1975:

Appellant was found guilty on April 8, 1974, by the lower court sitting without a jury of possession of marijuana and possession with intent to deliver marijuana.[1] Following the denial of post-trial motions, the appellant was fined $500 and sentenced to a term of not less than 3 months nor more than 22 months in the Blair County Prison.

---

1. Appellant was arrested and tried for violation of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §1 (35 P.S. §780-101) *et seq.*

The facts indicate that appellant lived with his grand-mother, Mrs. Smith, in her house in Taylor Township, Blair County, adjacent to the Borough of Roaring Springs. On October 15, 1973, Mr. Norman Decker went to the wooded area behind the property looking for a friend who was training hunting dogs. On his way back to his car, Mr. Decker crossed Mrs. Smith's property. He noticed a car parked in the rear of the property, and walked over to it. Mr. Decker felt the car had been abandoned because it had no license plate, and because grass and weeds had grown up around it.

Mr. Decker glanced into the car and observed rolls or packages of newspaper. Although Mr. Decker was a full time employee of the New Enterprise Stone and Lime Company, he also served, on a part-time basis, as an auxiliary policeman in the Borough of Roaring Springs. As a result of training he had received for his police work, he believed that the packages contained marijuana, which was in the process of being dried. Mr. Decker reached through a partially opened window and retrieved one of the packages.

Mr. Decker took the unopened package to the chief of police of Roaring Springs to have the contents analyzed. The chief could not positively identify the contents, and suggested that the State Police in Hollidaysburg would be better able to identify the substance. Acting on this advice, Mr. Decker proceeded to the State Police Barracks, where the substance was positively identified as mari-juana.

Troopers John Winklbauer and William Kephart then secured a search warrant and an arrest warrant and returned to the premises where the marijuana had been found. The search warrant was served on appellant's grandmother who gave the officers permission to search. While the troopers were removing the marijuana from the car, the appellant arrived on the scene. He was im-mediately placed under arrest and informed of his con-

stitutional rights. Appellant admitted the car and the marijuana were his, and informed the officers that there was more marijuana in a nearby shed. Appellant then took the troopers into the shed and helped carry the marijuana outside. Entire plants, weighing approximately 70 pounds, were confiscated.

Appellant now contends that the warrantless search by Mr. Decker was conducted in his capacity as a police officer or at the behest of a sovereign authority, and as such was illegal. Appellant argues that the subsequent warrant was based on illegally obtained information thus tainting *all* evidence secured under the warrant. Appellant finally argues that even if Mr. Decker was not acting as a police officer, but rather as a private citizen, the search should still come under the proscriptions of the Fourth Amendment to the United States Constitution. We find no merit to appellant's contentions and will, therefore, affirm.

It is well settled that a search by a private individual is not subject to the restraints of the fourth amendment. *Burdeau v. McDowell*, 256 U.S. 465 (1921); *Commonwealth v. Dingfelt*, 227 Pa. Superior Ct. 380, 323 A.2d 145 (1974). Although appellant argues that this should not apply in the Commonwealth, we will not overturn previous cases, and, once again, reaffirm this as the law in Pennsylvania.

We are, therefore, concerned only with the question of whether or not Mr. Decker was acting either in his capacity as an auxiliary police officer, or under the control of some government authority. A search conducted by a private citizen may lose its immunity if the police request the search, or if they take an active part in it. *Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966). However, where the search is conducted solely by a private citizen without police knowledge, and the results are later turned over to a proper law enforcement agency for further action, the evidence is admissible. *Commonwealth v. Kozak*, 233 Pa. Superior Ct. 348, 336 A.2d 387 (1975).

The testimony revealed that Mr. Decker worked 246 hours as an auxiliary policeman during 1973. He was not on a salary, but was paid an hourly rate of $2.00. Mr. Decker did not have a regular work shift as an auxiliary police officer, but was available to be called any time the chief of police felt additional help was needed. When he was on duty, Mr. Decker wore a uniform, carried a gun, and rode in the police car.

On October 15, 1973, Mr. Decker was not on duty, was not in uniform or carrying his police weapon, and was not even in Roaring Springs, his jurisdictional territory, when he made the search. Mr. Decker also testified that he was *not* on the property looking for marijuana at the direction of any law enforcement agency.

Auxiliary policemen are discussed at 53 P.S. §735:

"(a) Auxiliary policemen *on active duty* shall have the same powers as regular police officers of the municipality in which they are serving, and shall perform such other duties as may be assigned to them by the chief of police.

. . .

(c) The powers herein conferred may be exercised by auxiliary policemen *only after they report for active duty and until they are relieved from duty.*" (emphasis added)[2]

The statute clearly indicates that the powers and authority of auxiliary police officers are in effect *only* while they are on active duty. Once the particular tour of duty is completed, the auxiliary officer returns to his former station as a private citizen. He no longer has the unique powers and abilities which society vests in him by virtue of his position as a policeman, nor does he have the sometimes staggering burdens which often accompany the job. We must recognize that there is a very real

2. Act of January 14, 1952, P.L. (1951) 2016, §5 (53 P.S. §735).

difference between an on duty auxiliary police officer and an off duty auxiliary police officer. We hold that an off duty auxiliary police officer is a private citizen and as such is not bound by the restrictions of the fourth amendment insofar as they apply to a search.

Finally, the trial judge did not accept appellant's contention that Mr. Decker was actually working under orders from either the Roaring Springs' police authorities or the Pennsylvania State Police. "It is well settled that a jury or a trial Court can believe all or a part of or none of . . . the testimony of any witness: (citations omitted)." *Commonwealth v. Carroll*, 412 Pa. 525, 533, 194 A.2d 911, 916 (1963). Mr. Decker testified that he was not under police orders or on any course of conduct influenced by or guided by any governmental agency when he entered the property of appellant's grandmother, and the trial court believed this testimony. The trial judge's finding is supported by the record and will not be disturbed on appeal. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972); *Commonwealth v. Weiner*, 230 Pa. Superior Ct. 245, 326 A.2d 896 (1974).

The judgment of sentence of the lower court is affirmed.

---

CONCURRING OPINION BY SPAETH, J.:

I cannot agree with the broad holding announced in Judge PRICE's opinion. I nevertheless concur in affirming the judgment of sentence, for I consider that on the particular facts of this case, the auxiliary officer was acting only as a private citizen.

---

DISSENTING OPINION BY HOFFMAN, J.:

In the instant case, the lower court correctly stated that "[t]here is no question that if Decker [an off-duty auxiliary police officer] was acting as an agent of sovereign authority the search and seizure of the [appellant's]

automobile located on the [appellant's] premises would be unconstitutional and the evidence subsequently obtained would also be inadmissible in evidence against the [appellant]." Thus the critical issue is whether an off-duty auxiliary police officer is an agent of the state for purposes of constitutional analysis.

While I agree with the Majority's statement of the case, I want to underscore several additional facts. The following is Decker's suppression hearing testimony concerning his duties as a member of the Borough of Roaring Springs Police Department:

"Q. [by appellant's counsel] : Now, with respect to your duties as a police officer, you indicate that you are an auxiliary police officer?

"A. [by Decker] : That is right.

"Q. Do you get paid by the hour?

"A. Right.

"Q. You're on call at all times?

"A. No, not at all times, just whenever they need someone to help out they call us.

"Q. You wear a uniform?

"A. Yes.

"Q. Carry a gun?

"A. Yes.

"Q. Ride a squad car?

"A. Yes.

". . . Q. So you're on call pretty regularly aren't you?

"A. Whenever they call us yes."

Officer Decker was alerted that marijuana might have been contained in the newspaper as a result of training which he received in connection with his police work:

"Q. [by appellant's counsel]: Well, what made you go in and look around in this car? His car was parked on the property?

"A. The car was at the edge of the woods and I seen this stuff wrapped up in paper. Alright, we was [sic] had

a guy at the barracks that talked about marijuana. How it was wrapped and dried and so on and so forth and this was brought to my attention."

Finally, the officer immediately brought one of the packages of marijuana, unopened, to his police superior, the Chief of Police in Roaring Springs. The Chief called the State Police; *Decker was then told to take the suspected marijuana to State Police Barracks.*

I agree that Decker was not on active duty on October 15, 1973.[1] The Majority is, however, overly solicitous of relieving the auxiliary officer of the "staggering burdens which often accompany the job," while it permits the abridgment of appellant's fourth amendment rights. I do not suggest that an off-duty auxiliary officer is required to perform a duty to the public greater than that required of an ordinary citizen. Once the auxiliary officer does act, however, within the scope of his ordinary responsibility, relying on skills and training acquired while in state employment, I would hold that for constitutional purposes, he must act reasonably towards his fellow citizens. If the officer is not held to a reasonable standard of behavior, we permit a class of state-trained police officers to ferret out crime unconstrained by important constitutional guarantees.

Although the facts in the instant case are equivocal, I believe that Decker's action amounted to police action. He was not merely a Sunday morning traffic officer; he was fully trained to perform normal police duties. The local police force apparently arranged lectures or training sessions on such subjects as drugs. Such training was instrumental in Decker's discovery of the contraband in this instant case. Finally, it was Decker who carried the marijuana to the State Police barracks at the instruction

---

1. See Act of January 14, 1952, P.L. (1951) 2016, §5; 53 P.S. §735.

of his police superior—an act totally inconsistent with the theory that Decker was a mere private citizen.[2]

---

2. For an alternative grounds for reversal, see *Commonwealth v. Kozak*, 233 Pa. Superior Ct. 348, 336 A.2d 387 (1975) (dissenting opinion by JACOBS, J., in which HOFFMAN and SPAETH, JJ., joined). On closely analogous facts, I joined Judge JACOBS' opinion that even if the police did not initiate the original search, their participation before the completion of the search can be sufficient to require acquisition of a warrant before they become recipients of the fruits of the search.